Randolph & Jenks *v.* Merchants National Bank.

RANDOLPH & JENKS *v.* MERCHANTS NATIONAL BANK OF MEMPHIS.

.1. BILL OF EXCHANGE. *Guarantee.* B. & Co., merchants at Memphis, presented to the defendant for discount a draft drawn on the complainants, merchants at Philadelphia, for $8,100 at ten days after sight. To the draft was attached bills of lading of ninety bales of cotton, which B. & Co. said they had shipped to complainants, and against which the draft was drawn. The bills of lading were in fact fictitious, but this was not known to defendant. The amount drawn for upon each bale was ninety dollars. The complainants had had previous dealings of like character with B. & Co., and had authorized them to draw on them for ninety dollars for each bale shipped. Soon after the draft was discounted B. & Co. notified the defendant that they had received a telegram from complainants limiting them to eighty dollars per bale, thereupon the president of defendant wrote the following letter to its correspondent at Philadelphia, and enclosed it in the same letter which conveyed the draft, to-wit: "If Messrs. R. & Jenks object to accepting the bill on account of amount being ninety dollars instead of eighty dollars per bale, guarantee them that we will have other cotton or margin sent, and have them accept. Signed, W. H. Cherry, Pres't." When presented for acceptance by defendant's correspondent complainants refused to accept the draft, but upon defendant's correspondent presenting the above letter, complainants accepted and afterwards paid the draft. Upon bill filed to hold defendant liable as guarantor for the full amount of the draft; *held,* that the letter made the defendant guarantor for only ten dollars per bale.

2. SAME. *Acceptance of. Innocent holder. Arguendo.* The court say, that if the draft had been accepted by complainants without the guarantee, that the complainants would have no recourse upon defendant, it being an innocent holder.

FROM SHELBY.

Appeal from the Chancery Court. R. J. MORGAN, Chancellor.

ESTES, JACKSON & McDAVITT for complainants.

Randolph & Jenks v. Merchants National Bank.

STEPHENS & SMITH for defendant.

MCFARLAND, J., delivered the opinion of the court.

The complainants were, in the year 1866, 1867, cotton and commission merchants in the City of Philadelphia. O. C. Boone & Co. were engaged in the cotton trade at Memphis, and were in the habit of shipping cotton to the complainants to be sold on commission, and for the purpose of meeting their engagements at Memphis, they drew drafts or bills of exchange on the complainants at Philadelphia, which they negotiated or had discounted by the banks or brokers at Memphis. The complainants were in the habit of accepting and paying these drafts and bills of O. C. Boone & Co. upon the faith of their shipments of cotton, requiring the bills of lading as evidence of the shipment to accompany the bill or draft. They, however, only authorized Boone & Co. to draw for amounts which the bills of lading were supposed to be sufficient to cover at the rate of so many dollars for each bale of cotton—this rate varied with the price of cotton Many transactions of large amounts of this character passed between the parties, and in many cases the defendant, the Merchants National Bank of Memphis, was the party by whom the bills or drafts at Memphis were discounted for Boone & Co.

On the 4th of June, 1867, O. C. Boone & Co. drew their bill at Memphis on the complainants, payable ten days after sight, to their own order for $8,100. The bill was accompanied by two bills of

lading, or what purported to be, for, in the aggregate, ninety bales of cotton, consigned to the complainants. The bill with the bills of lading attached was presented on the same day to the defendant at Memphis, and was endorsed by O. C. Boone & Co., and discounted by the bank, and the proceeds placed to the credit of O. C. Boone & Co., and paid out on their checks on that and the succeeding day. The bill with the accompanying bills of lading was endorsed by the defendant to the First National Bank at Philadelphia for collection, and forwarded by letter. Upon presentation it was accepted by the complainants under circumstances hereinafter to be noticed, and paid at maturity.

It turned out that the bills of lading were fictitious, that is, they lacked the signature of the first common carrier from Memphis to make them complete; at all events no cotton had been shipped. O. C. Boone & Co. failed, and provided no funds to reimburse the complainants. The complainants thereupon filed this bill to recover the amount of the bills from the defendant, the Merchants National Bank of Memphis. They also seek to recover the amount of a sight draft for $800, drawn by the same parties on the 5th of June, 1867, and negotiated in the same manner, and accompanied by similar fictitious bills of lading, which was paid by the complainants on presentation. But the complainants' counsel concede in argument that no recovery can be had upon this latter claim. The right to recover the amount of the $8,100 bill is earnestly pressed. Many grounds of

relief are assumed in the bill which are not now insisted upon, among others, that the defendant was interested with Boone & Co. in the cotton trade, was guilty of collusion, etc.

The argument upon both sides has been thorough and able, at the same time characterized by the utmost fairness and candor, and by this means the questions involved which are of interest have been brought within a small compass. It will be seen that the bill in question was drawn at the rate of ninety dollars for each bale of cotton, the rate which for a time previous had been the custom. It appears that after the bill had been discounted by the defendant, the cashier wrote a letter to their correspondent, First National Bank at Philadelphia, to whom they were sending it for collection, for the purpose of enclosing the bill. After this letter was written, but before it was forwarded, the bank was notified by Boone that he had just received a telegram from the complainants directing him to limit his draft to eighty dollars per bale. Thereupon W. H. Cherry, the president of the bank, added these words to the letter, to-wit: "If Mess. R. & Jenks object to accepting the bill on account of amount being ninety dollars instead of eighty per bale, guarantee them that we will have other cotton or margin sent, and have them accept. Signed, W. H. Cherry, Pres't."

The bill charges that the bill and the letter were presented, and the bill accepted mainly upon the credit of the bank.

Philler, the vice-president of the First National

Bank at Philadelphia, proves that upon the receipt of the bill it was sent to the complainants for acceptance and acceptance was refused. He thereupon called upon them, exhibited the letter of Cherry above set forth; that he gave complainants his opinion that this was a guarantee of the whole bill, but did not propose to give them any other guarantee than what was contained in the letter itself, which was exhibited as his only authority.

The bill was thereupon accepted and afterwards paid.

It is conceded by complainants' counsel that if the bill had been accepted without the guarantee, as the subsequent draft of $800 was, that the complainants would have no recourse upon the defendant.

The fact that the bills of lading turned out to be fictitious or fraudulent, a fact not known to complainants or defendant, while it would show a clear failure of consideration as between the complainants and the drawers, would be no defense to an action upon the acceptance by the defendant, it being an innocent holder for value without knowledge of the fraud. This is clearly settled by several well considered cases. See *Robinson* v. *Reynold,* decided first by the Court of Queen's Bench, and afterwards in the Exchequer Chamber, reported 42 vol. En. Com. L. Rep., 634; *Hoffman* v. *The Bank of Milwaukie,* 12 Wallace, 181; *Craig* v. *Sibbett & Jones,* 15 Penn. State Rep., 238.

But it is maintained that this bill was not accepted for the drawers or upon their account, but upon the faith of the defendant's guarantee in the letter of Cherry above referred to.

Philler was only a special agent of the defendant in this matter, acting under the written instructions exhibited at the time, and could not therefore bind his principal beyond the authority given, in fact did not attempt to do so. His opinion was of no consequence. The proper construction of the letter of W. H. Cherry, which we have referred to, is a question for the court. In the light of the previous transactions and the attending circumstances, we construe this letter not to be a proposition to guarantee the payment of the whole bill, but to guarantee only the deficit in the cotton, or the sum which the bill exceeded the proper amount at the rate of eighty dollars instead of ninety dollars per bale. We think it manifest from the entire record that the refusal of the complainants to accept the bill in the first instance, if they did refuse, was only because it exceeded the rate at which they had agreed to accept, that is eighty instead of ninety dollars per bale. They did not suspect the correctness of the bills of lading. They had accepted upon other bills of lading that were similar, but Boone & Co had managed hitherto to prevent exposure by supplying the cotton afterwards. Upon the supposition that the bills of lading were genuine the complainants were in good faith bound to accept to the extent of eighty dollars per bale, as they had agreed to do. The excess of the bill being the only ground of objection, the defendant proposed to meet this by guaranteeing the deficit, both parties supposing the bills of lading to be good security to the extent of eighty dollars per bale. This security was

held by the complainants, but not by the defendant. The entire record leaves no doubt upon our mind that both parties must have understood this to be a guartee of the deficit or margin only. It is argued that complainants had the right to regard this as a guarantee of the whole bill, for the reason, that on a previous occasion, in February, when Boone & Co. had drawn a bill for too large a sum, the defendant had secured its acceptance by guaranteeing the whole bill. There was no connection whatever between that transaction and the present one, but aside from this, although the language of the former guarantee is somewhat more obscure than this, still we should hold that guarantee also, in the light of the attending circumstances, to be a guarantee similar to this—of the additional margin only.

It is next argued that the defendant in the letter of Cherry having given a guarantee ambiguous in its language, and equally susceptible of two different constructions, the defendant is bound by the constructions placed upon it.

Without discussing the principle of law advocated, it is sufficient to say, that in our opinion, the terms of the letter, taken with the surroundings, are not ambiguous, and that it is susceptible of but one reasonable construction, and that complainants were not authorized to put any other construction upon it.

This brings us to the last question made by the complainants' counsel, that is, conceding the letter of guarantee to be only for the $900—excess of the bill, still he argues that as the bill when first presented

was refused, that when presented and accepted upon this partial guarantee, the defendant then in effect became responsible for the genuineness of the bills of lading.

The reason the failure of the bills of lading would have been no defense to an action by the defendant upon the complainants' acceptance is, that the defendant was an innocent endorsee and holder for value without knowledge of the fraud, holding the bill upon a consideration wholly different from the one moving between the drawers and the complainants, that is, the consideration paid by the defendant when it discounted the bill, and this was in no degree affected by the failure of the bills of lading.

These principles are fully discussed in the authorities referred to, but it is argued that when this bill was presented the second time with the partial guarantee, the defendant lost its attitude of an innocent endorsee for value, and presented itself requesting the acceptance of the bill upon its own credit and for its accommodation, and therefore it must be regarded as the holder and owner of the bills of lading, and consequently responsible for their being genuine. This argument is ingenious, but we think not sound. We do not see that the proposition to guarantee the additional margin of cotton by the defendant in any respect changed the attitude of the parties, except simply to make the defendant liable to the extent proposed. In all other respects the attitude of the parties and their rights must remain precisely as if this guarantee were out of the way, and, as we have seen

in all other respects, it is simply a case where the complainants have accepted and paid the bill, upon a consideration that, as between them and the drawers, has failed. That is upon fictitious and fraudulent bills of lading.

This, upon well settled principles, is no defense against the defendant, who is an innocent holder for value, except only to the extent this is changed by the guarantee.

The Chancellor held the defendant liable for $900 and interest, being the amount of its guarantee. This liability the defendant does not resist.

The decree will be affirmed with costs.